## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| TARA SAGLIANO,<br>          Plaintiff,<br><br>          v.<br><br>ULTA SALON, COSMETICS &<br>FRAGRANCE, INC.,<br>          Defendant. | No. 3:12-cv-01503 (JAM) |

### RULING GRANTING SUMMARY JUDGMENT

Plaintiff claims that she was the victim of pregnancy discrimination because her employer filled her job with another employee two months after plaintiff went out on an indefinite medical leave for a pregnancy-related condition. Defendant has moved for summary judgment, and I conclude that no genuine issue of fact remains to suggest that plaintiff lost her job because of pregnancy discrimination.

### BACKGROUND

Defendant Ulta Salon, Cosmetics & Fragrance, Inc. operates more than 700 salon and fragrance stores across the United States. In September 2010, defendant hired plaintiff Tara Sagliano as general manager for one of its stores in North Haven, Connecticut. Plaintiff's supervisor was district manager Maureen McDonough, who hired plaintiff for the general manager position. As general manager, plaintiff was a salaried employee in charge of all other employees in her store.

At some point in the spring of 2011, plaintiff became pregnant, and the following summer her physician certified her as unable to work because of pregnancy-related sciatic pain in her back. On June 21, 2011, plaintiff went out on an approved disability leave of absence. Because she had not yet been employed by the company for one year,

plaintiff was not eligible for special leave under state or federal law, such as the federal Family and Medical Leave Act (FMLA). On the other hand, plaintiff was nonetheless eligible for certain benefits under the company's short-term disability policy that applied to any disabled employee, whether by reason of pregnancy or other cause. First, the company would protect plaintiff's job and refrain from filling it with another person for eight weeks. Second, she would receive short-term disability payments for up to six months, as long as she remained disabled. Moreover, if her former position was no longer available when she was no longer disabled, she would be invited to re-apply for an open position with the company.

On July 15, 2011, the company's benefits department wrote a letter to plaintiff to inform her that her job would remain protected for eight weeks from the date of her leave until August 16, 2011, advising that "if you remain out on short term disability for longer than eight weeks, your current position may not remain open and may be filled." Doc. #45-3 at 81. Plaintiff did not then or at any time contact her supervisor or anyone at the company to object to losing her job protection or, for that matter, to state that she had any intention of returning to her job or any other position with the company in the future.

One month later, on August 17, 2011, the benefits department wrote to plaintiff again to advise her that the company's disability insurer had approved an extension of her disability payments until August 28, 2011. The letter, however, further stated that "you have exhausted your allowance of eight weeks ULTA granted job protection as of 8-16-11." *Id.* at 85. According to the letter, plaintiff was then an "inactive employee" for as long as she qualified for disability payments and she was eligible to "re-apply for an open position at ULTA once you are fully released to work." *Ibid.* As noted above, plaintiff did

2

not respond to this letter to object to the end of her job protection or to state any desire to work for defendant again when she was no longer disabled.

On August 28, 2011, McDonough hired a replacement for plaintiff's position as general manager of the North Haven store. The new hire was a non-pregnant woman who had previously worked as a lower-level merchandising manager at the store.

In the meantime, and in accordance with defendant's policy, plaintiff continued as an "inactive" employee, receiving short-term disability payments from defendant's insurer until December 2011. Plaintiff also continued to receive coverage from the company's health insurance as if she were an employee. These payments and health insurance continued into early December 2011, several weeks past the birth of plaintiff's child in late October 2011. Company records reflect that plaintiff was terminated from her "inactive" employee status on December 18, 2011. She did not seek re-employment including to numerous general manager jobs at other locations in Connecticut that later became available.

In October 2012, plaintiff filed this federal lawsuit claiming that she was terminated in violation of federal and state pregnancy discrimination laws.[1] Defendant now moves for summary judgment on the ground that there is no genuine issue of fact to suggest that plaintiff was discriminated against on the basis of her pregnancy.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] Plaintiff has abandoned her claims of gender discrimination.

Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against its employees because of an employee's sex. 42 U.S.C. § 2000e-2(a)(1). Sex discrimination includes discrimination because of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k). Connecticut's cognate anti-discrimination law, the Connecticut Fair Employment Practices Act, similarly prohibits discrimination based on pregnancy, *see* Conn. Gen. Stat. §§ 46a-51(17), -60(a)(1), and additionally prohibits employers from refusing to reinstate employees who seek to return after pregnancy-related disability leave, *see* Conn. Gen. Stat. § 46a-60(a)(7)(D).

Plaintiff's federal and state claims are governed alike by the familiar *McDonnell Douglas* burden-shifting framework. *See Hall v. Family Care Home Visiting Nurse & Home Care Agency, LLC*, 696 F. Supp. 2d 190, 200 (D. Conn. 2010). Accordingly,

plaintiff must present a *prima facie* case by proving that "(1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998) (internal quotation marks and citation omitted). Assuming plaintiff meets her initial burden, defendant must then articulate a legitimate, non-discriminatory reason for the adverse employment action. *Ibid.* If so, then plaintiff in turn must prove "that the employer's stated reason was a pretext for discrimination," and it is clear that she cannot meet that burden unless she shows both that the employer's stated reason is untrue or incomplete, and that discrimination was a motivating factor for her discharge. *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 157 (2d Cir. 2010); *Kerzer*, 156 F.3d at 401 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 509 U.S. 502, 515 (1993)).

Here, plaintiff has easily established a *prima facie* case under the *McDonnell Douglas* test. Defendant concedes three of the four sub-elements, and defendant does not dispute that plaintiff's job was filled by a non-pregnant female.[2] As to the second part of the *McDonnell Douglas* test, defendant has articulated non-discriminatory reasons for terminating plaintiff's employment—that its short-term disability policy protected the position of a disabled employee for only eight weeks and that plaintiff never expressed an intent to return to the company after her pregnancy and despite defendant's invitation for her to apply for an open position.

---

[2] In light of the Second Circuit's clear statements in both *Kerzer* and *Quaratino* that the final sub-element in the pregnancy discrimination context is legally satisfied by a showing that the position in question was filled with a non-pregnant person, it remains a puzzle why defense counsel refused to concede the final element in either his briefing or when specifically pressed on the issue at oral argument.

There is no merit to plaintiff's contention that defendant has been inconsistent with respect to its justifications for plaintiff's termination. Defendant has emphasized both that it limits job protection for short-term disabled employees who are ineligible for FMLA to only eight weeks and that plaintiff, in any event, never expressed her intent to return, whether before her eight weeks were up or afterward. Although plaintiff claims that it would have been futile for her to do so, the fact remains that she was advised by letter of July 15, 2011, that her job would remain protected only until August 16, 2011, and at no time did she ever seek an extension of time or other accommodation to allow her to return to her former position or a comparable position with the company. A company's generally applicable disability policy as well as a particular employee's disinterest in returning to work are both legitimate business reasons that have nothing to do with pregnancy discrimination.

The dispositive issue, then, is whether a genuine fact issue remains to suggest that defendant's stated non-discriminatory reasons were untrue or incomplete and that pregnancy discrimination motivated defendant to remove plaintiff from her store manager job. In my view, the answer is abundantly clear: no rational jury could conceivably conclude that plaintiff lost her job because of pregnancy discrimination. To begin with, plaintiff has pointed to no direct evidence of discrimination in the form of hostile comments or other animus towards women and pregnancy. Quite to the contrary, it is undisputed that more than 90% of defendant's employees are female. Moreover, examples of the company's *non*-discrimination abound. The parties agree that defendant extended maternity leave followed by continued employment to plaintiff's own supervisor, Maureen McDonough in 2010–11, and that three other general managers who

reported to McDonough went out on maternity leave and then returned to their general manager positions with the company afterwards. These facts are not alone conclusive but they are significant evidence that the company and plaintiff's supervisor in particular lacked discriminatory animus toward pregnant women.

At oral argument, plaintiff conceded that, standing alone, a company's policy of offering only eight weeks of job-protected status for a non-FMLA-qualified employee does not violate pregnancy discrimination laws if applied to pregnant employees. Instead, plaintiff made clear that she relies on a claim that defendant's application of that policy in this case amounts to disparate treatment—that defendant treated at least some other employees more favorably than plaintiff and in a manner that is suggestive of pregnancy discrimination. It is fair game for plaintiff to rely on comparator evidence but whether comparators are similarly situated "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff has pointed to several alleged comparators.[3] First, plaintiff points to defendant's admission that "the defendant has had a general manager employee (the same job as the plaintiff held) that was out on short term disability for a full six months and was allowed to return to his/her job." Doc. #48-6 at 5–6 (Request for Admission #6). The record otherwise states nothing else about this anonymous employee, and I cannot conclude that in light of the very limited information known about this employee that he or she is a useful comparator. For example, there is no indication that this employee

---

[3] When plaintiff was asked at her deposition whether she knew of any co-workers who were treated better by defendant because they were not pregnant, the only example she gave was someone who was plainly not similarly situated—a male who was suspended for two days because of sexual harassment allegations and who the company then allowed to return after the male employee's lawyer pressured the company to do so. *See* Doc. #45-2 at 86–87.

worked in Connecticut or was subject to the same supervisory structure as plaintiff. Nor is there any indication why this employee was out on short-term disability. If the reason were pregnancy, then the company's favorable treatment of the employee would hardly show animus on grounds of pregnancy in plaintiff's case. Neither can it be known whether the anonymous employee actually requested to return to work (unlike plaintiff) or whether the employee's job had remained open or had come newly open at the end of the disability period (unlike in plaintiff's case where the position had been and remained filled).

For plaintiff's second comparator, she points to defendant's admission that "the defendant has had a general manager employee (the same job as the plaintiff held) that was out on workers' compensation for a full six months and who was allowed to return to his/her job." *Id.* at 6 (Request for Admission #7). As with the prior example, there is no further useful information about this second anonymous employee upon which to conclude that the employee is similarly situated. In any event, there is ample reason having nothing to do with pregnancy why a company might decide to give more favorable leave to someone who qualifies for workers' compensation (*i.e.*, has been injured on the job while in the service of the employer) than all other employees who have sustained off-the-job disabilities (whether as a result of pregnancy, a sports injury, or any other non-job-related medical misfortune).

Plaintiff also refers to a comparator-employee named Stephanie Dubois who returned to her job after 191 days of short-term disability but about whom nothing else is known.[4] As with the first anonymous employee above, Dubois is not a useful comparator

---

[4] It is not clear from the record whether Ms. Dubois is the same anonymous employee referenced in the aforementioned Request for Admission #6.

because it is not known why she was on short-term disability, what openings were available upon her return, or what efforts she made to return to the company's employ.

In short, plaintiff has failed to adduce any direct or indirect evidence that she lost her job because of pregnancy discrimination. To the contrary, the record evidence overwhelmingly shows that she lost her job because she became medically disabled for at least several months and because the company had a policy that protected the position of short-term disabled employees—whether for reasons of pregnancy or not—for a period of only eight weeks. Nor did she at any time express an intention to return to her job or actually seek new employment with the company despite the company's invitation to do so and despite the company's extension in her favor of disability payments and medical insurance coverage for six months. Based on the very limited information known about comparators, no jury could reasonably conclude, to the extent that there are other employees of the company who were on short-term disability for more than six months and who were able to return to the same position at the company, that any difference in treatment is explained by pregnancy discrimination.

Although the parties have not raised this issue, I note that the Supreme Court now has pending before it a significant case involving interpretation of the federal Pregnancy Discrimination Act. *See Young v. United Parcel Serv., Inc.*, No. 12-1226 (U.S. cert. granted July 1, 2014, and oral argument held on December 3, 2014). The question presented in that case is: "Whether, and in what circumstances, an employer that provides work accommodations to nonpregnant employees with work limitations must provide work accommodations to pregnant employees who are 'similar in their ability or inability to work.'" *See* Petition for a Writ of Certiorari at i, *Young v. United Parcel Serv., Inc.*,

No. 12-1226, 2013 WL 1462041 (U.S. April 8, 2013). Because that case involves the scope of workplace accommodations for a pregnant employee, while this case involves a claim of pregnancy-based termination of employment, I conclude that there is no need to withhold decision in this case until the Supreme Court rules.

### CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Doc. #38). The Clerk is directed to close this case.

**SO ORDERED** this 11th day of January 2015, at Bridgeport, Connecticut.

<u>Jeffrey Alker Meyer</u>
Jeffrey Alker Meyer
United States District Judge